**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| CHRISTOPHER PAULI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| MBT FINANCIAL CORP., MICHAEL J. MILLER, H. DOUGLAS CHAFFIN, JOSEPH S. DALY, PETER H. CARLTON, DEBRA J. SHAH, JOHN L. SKIBSKI, JAMES F. DEUTSCH, TONY SCAVUZZO, KRISTINE L. BARANN, and JOSEPH S. VIG, | |
| Defendants. | |

Case No.

Hon.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff Christopher Pauli ("Plaintiff"), through his undersigned counsel, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of MBT Financial Corp. ("MBT" or the "Company") (other than Defendants outlined below) against the Company and its Board of Directors (the "Board" or "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act") in connection with the proposed merger between MBT and First Merchants Corporation and its affiliates (collectively, "First Merchants") whereby MBT will merge with and into First Merchants in a 100% stock transaction (the "Proposed Transaction" or "Merger").

2.    On October 9, 2018, the Board approved the terms of and caused the Company to enter into an agreement and plan of reorganization and merger (the "Merger Agreement"), pursuant to which each share of MBT common stock will be converted into the right to receive 0.2750 shares of First Merchants common stock (the "Exchange Ratio"). As of December 18, 2018, the record date for the Proposed Transaction, the closing price of First Merchants' common stock was $35.86, which, after giving effect to the Exchange Ratio, results in an implied value of approximately $9.86 per share of MBT common stock (the "Merger Consideration"). As discussed below, the implied value of the Merger Consideration is well below the implied value range of a proposal submitted by another party during the process leading to the Proposed Transaction, or $13.00-13.50, as of the date of its receipt by MBT.

3.    In order to convince MBT's stockholders to vote in favor of the Proposed Transaction, on December 21, 2018, the Board authorized the filing of a materially incomplete and false and/or misleading Definitive Proxy Statement (the "Proxy" or "Proxy Statement") with the Securities and Exchange Commission

("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. In the Proxy, the Board set forth information on which it relied to recommend that MBT shareholders vote in favor of the Proposed Transaction. While Defendants tout the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy incomplete and false and/or misleading, including information regarding (a) the process that resulted in the Proposed Transaction, (b) the financial projections for MBT and First Merchants, (c) the financial analyses conducted by one of the Company's financial advisors, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), in connection with the Proposed Transaction; and (d) the work performed by the Company's other financial advisor, Donnelly Penman & Partners ("Donnelly Penman"), in connection with the Proposed Transaction.

4.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MBT stockholders before the February 14, 2019 vote on the Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

6.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, (ii) MBT maintains its primary place of business in this District, (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iv) Defendants have received substantial remuneration in this District by doing business here and engaging in activities that had an effect in this District.

## PARTIES

8.      Plaintiff is, and at all relevant times has been, an MBT shareholder

- 4 -

(Exhibit 1).

9.     Defendant MBT is a corporation organized and existing under the laws of the State of Michigan with its principal place of business located at 102 E. Front Street, Monroe, Michigan 48161.

10.     Defendant Michael J. Miller ("Miller") has served as a director of the Company since 2000 and as Chairman of the Board at all relevant times.

11.     Defendant H. Douglas Chaffin ("Chaffin") has served as a director of the Company since 2004 and as the Company's President and Chief Executive Officer ("CEO") at all relevant times.

12.     Defendant Joseph S. Daly ("Daly") has served as a director of the Company since 2003.

13.     Defendant Peter H. Carlton ("Carlton") has served as a director of the Company since 2004.

14.     Defendant Debra J. Shah ("Shah") has served as a director of the Company since 2006 and as the Company's Executive Vice President and Chief Financial Officer at all relevant times.

15.     Defendant John L. Skibski ("Skibiski") has served as a director of the Company since 2008.

16.     Defendant James F. Deutsch ("Deutsch") has served as a director of the Company since 2015.

17.   Defendant Tony Scavuzzo ("Scavuzzo") has served as a director of the Company since 2015.

18.   Defendant Kristine L. Barann ("Barann") has served as a director of the Company since 2017.

19.   Defendant Joseph S. Vig ("Vig") has served as a director of the Company since 2017.

20.   Defendants Miller, Chaffin, Daly, Carlton, Shah, Skibski, Deutsch, Scavuzzo, Barann, and Vig form the Board of Directors of MBT and are collectively referred to herein as the "Board" or the "Individual Defendants." Each of the Individual Defendants at all relevant times had the power to control and direct MBT to engage in the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

21.   Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of MBT (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.   This action is properly maintainable as a class action because:

a.   The Class is so numerous that joinder of all members is impracticable. As of December 18, 2018, there were approximately 23,025,525 outstanding shares of MBT common stock. The actual number of

public shareholders of MBT will be ascertained through discovery;

  b.  There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i)  whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

    ii)  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii)  whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

  c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

  d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

  e.  The prosecution of separate actions by individual members of the

Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

## I.      Relevant Corporate Background

23.      MBT is a bank holding company headquartered in Monroe, Michigan. MBT's wholly-owned bank subsidiary, Monroe Bank & Trust, operates 20 banking offices in Monroe and Wayne Counties in Michigan. In addition to Monroe Bank & Trust, MBT's other direct subsidiary is MB&T Financial Services, Inc., a Michigan corporation. MBT has no employees other than its three officers, each of whom is also an employee and officer of Monroe Bank & Trust and who serve in their capacity as officers of MBT. As of September 30, 2018, on a consolidated basis, MBT had assets of approximately $1.3 billion, deposits of approximately $1.2 billion, and shareholders' equity of approximately $121 million.

24.      On October 25, 2018, MBT announced its most recent financial results.

The preliminary results of operations and financial condition for and as of the quarter nine months ended September 30, 2018, strongly suggest that the Company is primed for continued growth and favorable financial performance. In particular, MBT reported a preliminary net profit of $4,974,000 in the third quarter of 2018, compared to a profit of $3,933,000 in the third quarter of 2017. For the first nine months of 2018, the Company reported profit of $13,821,000 compared to $10,753,000 for the first nine months of 2017. No doubt due, at least in part, to this strong performance, the Company also announced that it would pay a quarterly dividend of $0.10 per common share, an increase of $0.04 per share compared to the dividend paid in the same quarter last year.

25.     On July 26, 2018, MBT announced similarly favorable second quarter 2018 preliminary earnings and another dividend increase. In particular, the Company reported a preliminary net profit of $4,945,000 in the second quarter of 2018, compared to a profit of $3,640,000 in the second quarter of 2017. And, for the first six months of 2018, the Company reported profit of $8,847,000, compared to $6,820,000 for the first six months of 2017.

26.     In commenting on these results, Mr. Chaffin, MBT's President and CEO, remarked:

> We continue to see solid loan growth, and the improvement in net interest margin combined with the effects of the Tax Cuts and Jobs Act contributed to the substantial improvement in earnings this quarter. Our new business pipeline remains strong and we expect loan growth to

continue the rest of this year, which should lead to further margin improvement. Notably, we also expect credit quality to remain strong, as we see nothing that might inhibit our strong quality metrics in the near term. Our focus on managing our capital has also allowed us to bring more value to our shareholders, and the increase in the quarterly dividend we announced today reflects a higher payout ratio. Our earnings growth trend has been strong, and a consistent increase in the dividend will decrease the need for the special dividends we used in the past three years. **We will continue to keep our eyes open for the right opportunities to grow through strategic acquisitions**, while remaining disciplined in that regard. (emphasis added).

## II.    Events Leading to the Proposed Transaction

27.    The events leading to the Proposed Transaction began at a December 2017 Board meeting, during which the Board discussed and reviewed MBT's strategic opportunities, including, among others, continuing as an independent institution, growing internally and through acquisitions, or affiliating with another institution and actually determined to further discuss and review the possibility of an affiliation with a larger financial institution.

28.    During January 2018, the Board met with representatives of Sandler O'Neill and discussed in general terms the market conditions for mergers and acquisitions in the financial services industry and MBT's prospects as an acquiror and as a potential acquisition target of a larger financial institution.

29.    Months later, on June 1, 2018, the Board held a special meeting to further discuss a possible affiliation with a larger financial institution. The Board acknowledged its strong market position in the Monroe, Michigan banking market

but also its desire to extend geographically either through organic growth or growth by acquisitions and mergers. Also at this meeting, the Board determined that it was too risky to execute and too difficult to identify or successfully conclude the acquisitions of other financial institutions.

30.    In response to outreach by Mr. Chaffin, on July 26, 2018, representatives of Sandler O'Neill and Donnelly Penman met separately with the Board to discuss current market conditions for mergers and acquisitions in the community banking sector and to specifically discuss institutions that may have an interest in acquiring MBT. Sandler O'Neill and Donnelly Penman separately identified a possible universe of financial institutions that could be potential candidates for a strategic transaction with MBT. Following those discussions, Mr. Chaffin was directed by the Board to retain Sandler O'Neill and Donnelly Penman to assist MBT with the formal exploration of a possible combination of MBT with a larger financial institution.

31.    On July 31, 2018, the Board directed Sandler O'Neill to contact six financial institutions to assess their interest in MBT. All six institutions, including First Merchants, entered into confidentiality agreements during the first week of August 2018.

32.    Also on July 31, the Board established a special committee comprised of the following directors: Mr. Carlton, Mr. Chaffin, Mr. Daly, Mr. Deutsch, Mr.

Miller, Mr. Scavuzzo and Mr. Skibski (the "Special Committee").

33.    On or about August 15, 2018, First Merchants contacted Sandler O'Neill and indicated that First Merchants would be submitting a written indication of interest within the next several days and wanted to move forward with MBT on an exclusive basis to negotiate a definitive agreement to combine First Merchants and MBT.

34.    On August 17, 2018, First Merchants submitted a written indication of interest, which provided that, subject to due diligence, it was prepared to offer shareholders of MBT consideration comprised of 90% First Merchants common stock and 10% cash, which had a nominal value of $13.50 per share based upon the then market value of First Merchants' common stock (the "Initial Proposal").

35.    At a Special Committee meeting on August 19, 2018, the Special Committee was informed that one of the six parties had withdrawn from the process shortly after execution of the confidentiality agreement. The Special Committee then reviewed the Initial Proposal. The following day, at the direction of the Special Committee, representatives of Sandler O'Neill contacted First Merchants, and indicated that the offer was not sufficiently compelling to grant First Merchants exclusivity.  Representatives of Sandler O'Neill were also directed by the Special Committee to contact the other four interested parties and communicate that MBT had been approached by a party with a potentially preemptive bid and therefore the

exploration process would need to be adjusted. At some undisclosed time, Sandler O'Neill contacted the other remaining parties and instructed each party to make certain baseline financial assumptions and determine whether they would be in a position to be competitive at or above a pricing level in the mid $13.00 per MBT share area and asked that these parties provide a response within the next several days. The Proxy fails to disclose whether Sandler O'Neill was authorized by the Special Committee or other members of MBT management to communicate this pricing floor to the remaining interested parties.

36.    At a Special Committee meeting on August 23, 2018, with representatives of Shumaker, Loop & Kendrick, LLP, counsel to MBT, and representatives of Sandler O'Neill in attendance, Sandler O'Neill presented to the Special Committee the results of their conversations with the four remaining interested parties other than First Merchants. One of the parties indicated to Sandler O'Neill that it was moving forward with another potential transaction, and as a result, the interested party withdrew. Two of the other parties indicated that the pricing level indicated by Sandler O'Neill was above their pricing capacity and withdrew. The final interested party ("Party A") submitted an oral indication of interest, followed by an emailed indication of interest on August 23, 2018, with a 100% stock offer and an implied pricing level at that time of above $13.00 but below $13.50 per MBT share (the "Party A Proposal"). After further deliberations, the Special

Committee instructed Sandler O'Neill to ask First Merchants to again consider its offer. Notably, however, the Proxy fails to disclose MBT's response, if any, to the Party A Proposal.

37. On August 25, 2018, all of the members of the Board met to receive an update from the Special Committee and to review a revised, August 25, 2018 indication of interest received from First Merchants (the "Second Proposal"), which proposed an all-stock transaction pursuant to which shareholders of MBT would receive 0.2800 shares of First Merchants for each share of MBT which, based on the most recent closing price of First Merchants, equated to $13.59 per MBT share at that time. Sandler O'Neill also provided the Board with detailed financial information regarding the proposed merger, *including a comprehensive pro-forma merger analysis*. The members of the Board then discussed the Second Proposal and thereafter unanimously resolved to approve and execute First Merchants' indication of interest letter. Notably, the Proxy fails to disclose the implied value of Party A's Proposal as of the date of the meeting.

38. On October 5, 2018, after MBT and its representatives had conducted a limited scope reverse due diligence of First Merchants, the Board met to further discuss the transaction with First Merchants and receive an update on the due diligence progress. Representatives of Sandler O'Neill relayed First Merchants' determination that, as a result of its due diligence, it was adjusting the exchange ratio

proposed in its Second Proposal from 0.2800 to 0.2750 (the "Third Proposal"), which, based on the October 5 closing price of First Merchants, equated to an implied value of $12.45 per MBT share – **well below** the "mid $13.00 per MBT share" pricing floor that Sandler O'Neill had previously communicated to the four interested parties after the Special Committee's August 19, 2018 meeting, and likewise **well below** the $13.00-13.50 implied value range of the Party A Proposal. Critically, the Proxy again fails to disclose the implied value of the Party A Proposal as of the date of this meeting.

39.     Despite having what by all indications was a superior proposal from Party A in hand, and without even first attempting to reach out to Party A, or any of the four previously interested parties (including, in particular, those two parties who had withdrawn from the sale process on the stated grounds that the "mid $13.00 per MBT share" pricing floor was "above their pricing capacity"), the Board hastily determined to accept First Merchants' revised exchange ratio and directed Sandler O'Neill to communicate as such to First Merchants. The Board also determined to meet again on October 8, 2018 for the purpose of its final consideration of the final Merger Agreement.

40.     As planned, on October 8, 2018, the Board met to consider the final Merger Agreement, after which it approved the Merger Agreement and transactions set forth therein and authorized Mr. Chaffin to execute and deliver the Merger

Agreement and take the other actions necessary to effect the Proposed Transaction.

41.     On October 9, 2018 MBT and First Merchants executed the Merger Agreement. and the following day, on October 10, 2018, MBT and First Merchants issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

### First Merchants Corporation and MBT Financial Corporation Announce the Signing of a Definitive Merger Agreement

(MUNCIE, IN. and MONROE, MI, October 10, 2018) -- First Merchants Corporation (NASDAQ: FRME) and MBT Financial Corporation (NASDAQ: MBTF) today announced they have executed a definitive agreement whereby MBT Financial Corporation will merge with and into First Merchants Corporation in a 100% stock transaction valued at approximately $290.9 million. Upon completion of the merger, Monroe Bank & Trust, will merge with and into First Merchants Bank.

Headquartered in Monroe, Michigan, MBTF operates 20 banking center locations in the southeastern Michigan area. Since its founding in 1858, Monroe Bank & Trust has grown to one of the largest community banks in Michigan. MBTF has total assets of $1.3 billion, total loans of $733 million, and total deposits of $1.1 billion (96% of which are core) and also earned a 1.51% return on average assets and 16.59% return on tangible common equity for the three months ended June 30, 2018. Additionally, as of June 30, 2018, MBTF had approximately $998 million of deposits in the Monroe, Michigan Metropolitan Statistical Area, ranking it first in deposit market share with approximately 50% of the market. MBTF's Wealth Planning & Advisory Group has the fifth largest trust/investment services group among all banks in Michigan, with assets under management in excess of $700 million.

The merger agreement provides that shareholders of MBTF will have the right to receive 0.275 shares of First Merchants common stock for each share of MBTF common stock owned. Based on the closing price

of First Merchants' common stock on October 9, 2018 of $45.71 per share, the implied price of MBTF common stock is $12.57 per share.

The transaction is expected to be completed in the first quarter of 2019, subject to the affirmative vote of MBTF shareholders, regulatory approvals, and other customary conditions. The combined company, doing business as First Merchants Bank, expects to complete its integration during the third quarter of 2019.

First Merchants and MBTF will have combined assets of approximately $11 billion and will be the second largest financial holding company headquartered in Indiana. The combined company will have 134 banking offices in thirty-one Indiana counties, as well as two counties each in Michigan, Ohio and Illinois.

Michael C. Rechin, President and Chief Executive Officer of First Merchants, said, "Like First Merchants, Monroe Bank & Trust has a long history and a deep-rooted commitment to community banking and we are excited they have chosen to become the newest member of the First Merchants family. The MBTF franchise opens an entirely new contiguous banking market for us with a high-quality and prudently managed 160 year old institution. We believe that our strategy to be a service-driven alternative to our super-regional bank competitors will support the acceleration of Monroe Bank & Trust's current initiatives while furthering our goal of growing as a high-performing company."

Rechin added, "We expect this combination to be mutually beneficial to First Merchants and MBTF shareholders. We anticipate earnings per share accretion of approximately 2.7% in 2020 resulting in a tangible book value earnback of 3.3 years."

In First Merchants Bank's newly acquired market, the executive team will include Monroe Bank & Trust President and CEO, H. Douglas Chaffin; Wayne County President and Strategic Support Director, Scott McKelvey; Chief Lending Manager and Sales Director, Thomas Myers; and Wealth Planning, Advisory and Mentorship Director, Audrey Mistor. Mr. Chaffin will assume the role of Regional President.

Mr. Chaffin stated, "We believe our partnership with First Merchants will provide tremendous benefits to our customers, shareholders and

communities as we look forward to continuing the legacy of exceptional customer service, local responsiveness and strong community engagement that has defined Monroe Bank & Trust for 160 years."

42.     Notably, as noted above, based on the closing price of First Merchants' common stock on October 9, 2018 of $45.71 per share, the implied price of the Merger Consideration was just $12.57 per share.

## III.    The Materially Incomplete and Misleading Proxy

43.     On December 21, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction and discloses the bases on which the Board relied to recommend and solicit votes in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### a.     Material Misstatements/Omissions Regarding the Sales Process

44.     First, as noted above, the Proxy fails to disclose certain material information regarding the process that resulted in the Proposed Transaction,

including:

    a.  Whether MBT ever responded to the Party A Proposal and, if so, the nature and substance of such response(s). This information is material in light of the fact that, as noted above, the implied price range of the Party A Proposal as disclosed in the Proxy, $13.00-$13.50, was well above both the implied value of First Merchant's Third Proposal as of October 5, 2018, the date the Board accepted it, and the current implied value of the Merger Consideration.

    b.  The implied value of Party A's Proposal as of August 25, 2018 and October 5, 2018. Again, this information is material in light of the fact that the implied price range of the Party A Proposal as disclosed in the Proxy, $13.00-$13.50, was well above both the implied value of First Merchant's Third Proposal as of October 5, 2018, the date the Board accepted it, and the current implied value of the Merger Consideration.

    c.  The bases for the Board's determination to not attempt negotiations with or otherwise reach out to any previously interested party, including Party A, after the Board's October 5, 2018 receipt of First Merchant's Third Proposal. This information is material in light of the fact that the implied value of the Third Proposal, as of October 5, 2018, was below the "mid $13.00 per MBT share" pricing floor that Sandler O'Neill had

previously communicated to each of the four interested parties after the Special Committee's August 19, 2018 meeting, and likewise below the $13.00-$13.50 implied value range of the Party A Proposal as disclosed in the Proxy. This information is even more so material in light of the fact that two of the four previously interested parties that had withdrawn from the sale process had done so on the stated grounds that the "mid $13.00 per MBT share" pricing floor was "above their pricing capacity."

**b.      Material Misstatements/Omissions Regarding the Company's Projections**

45.     Second, the Proxy fails to provide material information concerning the Company's financial projections. Specifically, page 41 of the Proxy discloses that, in connection with its opinion, Sandler O'Neill reviewed and considered, among other things:

> Publicly available consensus median analyst earnings per share estimates for MBT for the years ending December 31, 2018 through December 31, 2020, as well as a long-term earnings per share growth rate for the years thereafter and dividends per share for the years ending December 31, 2018 through December 31, 2022, **as provided by the senior management of MBT**.

46.     However, the Proxy fails to disclose the long-term earnings per share growth rates or the dividends per share provided by MBT management for the years ending December 31, 2018 through December 31, 2022. Management projections

are plainly material to stockholders when deciding whether to vote for a merger. Such projections are critical for shareholders to assess the fairness of the consideration they have been offered.

47.     The omission of the above projection assumptions renders the summaries of Sandler O'Neill's valuation analyses that relied on such projection assumptions (Proxy Statement, 48-50) and the statements throughout the Proxy that the Merger Consideration "fair, from a financial point of view" to the Company's shareholders materially incomplete, false, and/or misleading.

### c.     Material Misstatements/Omissions Regarding Sandler O'Neill's Financial Analyses

48.     In addition, the Proxy also omits certain key inputs necessary for shareholders to assess the valuation analysis performed by Sandler O'Neill in support of its fairness opinion, rendering the summary of such analysis in the Proxy incomplete and misleading.

49.     Specifically, with respect to Sandler O'Neill's *Pro Forma Merger Analysis*, the Proxy fails to disclose (i) the "long-term earnings per share growth rate"; (ii) the "dividends per share for the years ending December 31, 2018 through December 31, 2022"; and (iii) the "estimated dividend payout ratio[,]" each of which were utilized in the analysis and provided by the senior management of First Merchants. Proxy, 49. In addition, the Proxy fails to disclose whether and to what extent the *Pro Forma Merger Analysis* differs from the "comprehensive pro-forma

merger analysis" provided to the Board by Sandler O'Neill at the Board's August 25, 2018 meeting. Proxy, 37. Lastly, the Proxy fails to disclose the "certain assumptions relating to transaction expenses, purchase accounting adjustments and cost savings, as provided by the senior management of First Merchants" that were reviewed and considered by Sandler O'Neill in its assessment of the "pro forma financial impact of the Merger." Proxy, 41. This information is material to MBT shareholders, and its omission renders the summary of Sandler O'Neill's *Pro Forma Merger Analysis* incomplete and misleading.

50.    With respect to Sandler O'Neill's *Net Present Value Analysis*, the Proxy fails to disclose (i) "long-term earnings per share growth rate"; and (ii) the "dividends per share for the years ending December 31, 2018 through December 31, 2022," each of which were utilized in the analysis and provided by the senior management of MBT. Proxy, 48. This information is material to MBT shareholders, and its omission renders the summary of Sandler O'Neill's *Net Present Value Analysis* incomplete and misleading.

51.    The Proxy also fails to identify exactly how much of Sandler O'Neill's fee is contingent upon the closing of the Merger. Proxy, 50.

**d.    Material Misstatements/Omissions Regarding the Work Performed by MBT's Other Financial Advisor, Donnelly Penman**

52.    Finally, the Proxy fails to disclose any information regarding the work performed by Donnelly Penman in connection with its evaluation of the Merger.

Specifically, the Proxy discloses that "Donnelly Penman participated as a co-financial advisor to MBT in connection with the Merger." Proxy, 50. Critically, however, the Proxy fails to disclose any opinion of Donnelly Penman as to the fairness of the Merger, any financial analyses performed by Donnelly Penman in furtherance of its role as a financial advisor in connection with the Merger, or even so much as a summary thereof.  And, to the extent Donnelly Penman did not provide an opinion concerning the fairness of the Merger or perform any financial analyses in consideration thereof, the Proxy fails to disclose its bases for not doing so, and the reasons why the Board engaged Donnelly Penman as a financial advisor in the first place and what exactly it did.

53.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### On Behalf of Plaintiff and the Class Against
### MBT and the Individual Defendants for Violations of Section 14(a)
### of the Securities Exchange Act of 1934 and Rule 14a-9 Promulgated
### Thereunder

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things, the process that led to the Proposed Transaction and the key inputs and assumptions of the financial analysis performed by Sandler O'Neill in support of its fairness opinion.

56.     In so doing, Defendants made untrue statements of fact and omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

57.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any 14D9 statement, form of 14D9, notice of meeting or other communication, written or oral, containing any statement which,

at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a 14D9 for the same meeting or subject matter which has become false or misleading.

58.     During the relevant period, Defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

59.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning certain material information regarding the process leading up to the consummation of the Merger Agreement, key inputs and assumptions underlying Sandler O'Neill's financial analysis, and the projections used by Sandler O'Neill in that analysis.

60.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Sandler O'Neill

reviewed its financial analysis with the Board and that the Board considered the financial analysis provided by Sandler O'Neill in its fairness opinion. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

61.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

62.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

63.     Unless Defendants are enjoined by the Court, they will continue to breach their duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

64.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

<u>**COUNT II**</u>

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Violations of Section 20(a) of the Securities Exchange Act of 1934**

65.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.     The Individual Defendants acted as controlling persons of MBT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MBT, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

67.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and,

therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

69.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

72.     Plaintiff has no adequate remedy at law. Only through the exercise of

this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict. Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Directing Defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 18, 2019                    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina, Esq.
Christopher Tillotson, Esq.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Tel: (504) 455-1400
michael.palestina@ksfcounsel.com
christopher.tillotson@ksfcounsel.com

*Attorneys for Plaintiff and Putative Class*