UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Christopher Pauli, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

MBT Financial Corp., et al.,

        Defendants.

_____/

Case No. 2:19-10181

Judge Linda V. Parker
Mag. Judge Mona K. Majzoub

Thomas P. Dillon (P55191)
Matthew T. Kemp (P79441)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Email:    mkemp@slk-law.com
         tdillon@slk-law.com
Attorneys for Defendants

## **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants MBT Financial Corp., Michael Miller, H. Douglas Chaffin, Joseph Daly, Peter Carlton, Debra Shah, John Skibski, James Deutsch, Tony Scavuzzo, Kristine Barann, and Joseph Vig jointly file this Brief in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF # 4).

## QUESTION PRESENTED

Whether Plaintiff – a 0.037% shareholder – is entitled to enjoin a shareholder vote on a $290 million merger based on the bare allegation that the Proxy Statement sent to shareholders should have contained a handful of additional details.

## MOST APPROPRIATE AUTHORITY

- Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4.

- *Parshall v. HCSB Fin. Corp.*, No. 4:17-CV-01589-RBH, 2017 WL 3130479, (D.S.C. July 24, 2017).

## **INTRODUCTION**

This suit is one of six "merger strike" suits filed so far regarding the $290 million merger of MBT Financial Corp. ("MBT") and First Merchants Corporation – four in Monroe County and two more in federal court. These suits are par for the course for any large public company merger, and Plaintiff's Complaint fits a predictable formula. Plaintiff is a shareholder who alleges that MBT and its Directors failed to disclose certain trivial details in its Proxy Statement asking shareholders to approve the merger, thereby violating federal securities laws.

Plaintiff, who owns less than one-tenth of one percent of all MBT stock, has now taken it upon himself to delay a shareholder vote to approve the merger. He does not come close to making the showing necessary for this extraordinary relief. First, Defendants have filed a contemporaneous motion to dismiss the Complaint because it fails to adequately allege claims for federal securities law violations, and thus Plaintiff has no likelihood of success on the merits. Second, Plaintiff has not shown irreparable harm. He has not submitted a shred of evidence supporting his claim of harm, and he has other viable remedies in any event. Third, the potential harm that an injunction would inflict on MBT, First Merchants, and their shareholders and customers far outweighs any claimed harm to Plaintiff. Fourth, the interest of the public – including market participants and customers of both

1

MBT and First Merchants – weighs against an injunction. For these reasons, Plaintiff's Motion should be denied.

## BACKGROUND

### A. History of Merger Strike Suits.

This lawsuit is part of a predictable pattern of "merger strike" suits afflicting public company transactions. The Seventh Circuit has summarized:

> In merger litigation the terms "strike suit" and "deal litigation" refer disapprovingly to cases in which a large public company announces an agreement that requires shareholder approval to acquire another large company, and a suit, often a class action, is filed on behalf of shareholders of one of the companies for the sole purpose of obtaining fees for the plaintiffs' counsel. Often the suit asks primarily or even exclusively for disclosure of details of the proposed transaction that could, in principle at least, affect shareholder approval of the transaction. But almost all such suits are designed to end—and very quickly too—in a settlement in which class counsel receive fees and the shareholders receive additional disclosures concerning the proposed transaction. The disclosures may be largely or even entirely worthless to the shareholders, in which event even a modest award of attorneys' fees . . . is excessive and the settlement should therefore be disapproved by the district judge.

*In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 721 (7th Cir. 2016).

### B. The strategic merger of MBT and First Merchants was carefully considered and exhaustively disclosed.

*1. The proposed merger will greatly benefit MBT shareholders.*

On October 10, 2018, MBT and First Merchants Corp. announced that they had executed a definitive agreement whereby MBT will merge with and into First Merchants in a 100% stock transaction valued at approximately $290.9 million.

2

(Complaint ¶ 41.)  MBT is a bank holding company incorporated under Michigan law and headquartered in Monroe, Michigan.  MBT's wholly-owned bank subsidiary is Monroe Bank & Trust, a Michigan commercial bank.  (Proxy, Ex. A at 5.)  First Merchants is a financial holding company that owns First Merchants Bank, with 116 full-service branches in Indiana, Illinois and Ohio.  (*Id*.)

The combined company will have assets of approximately $11 billion, with 134 banking offices in four states.  (Complaint ¶ 41, quoting October 10 press release.)  The Proxy Statement explains in considerable detail why the proposed merger is in the best interest of MBT shareholders.  The reasons include the strong financial and market position of First Merchants, including its earnings and stock performance; First Merchants' strong management and expertise with mergers of this nature; the compatibility of First Merchants' existing markets to those of MBT; the attractiveness of First Merchants' stock offer from a financial perspective; and the multiple strategic benefits of aligning MBT with a larger organization.  (Ex. A at 6, 39-40.)

> 2.  *MBT's Board gave careful consideration to the proposed merger and filed a detailed Proxy Statement.*

MBT's exploration of a potential merger grew out of its Board's regular analysis of long-term strategic alternatives.  (*Id*. at 35.)  Over the first seven months of 2018, the Board discussed with two experienced investment banking

firms, Sandler O'Neill and Donnelly Penman, the market conditions for potential mergers or acquisitions.  (*Id.*)

The Board established a Special Committee to further analyze potential merger opportunities, and on July 31, 2018, it directed Sandler O'Neill to contact six financial institutions to gauge their interest in a merger with MBT.  (*Id.* at 36.) The Proxy Statement describes the ensuing bidding process in considerable detail. (*Id.* at 36-37.)  In the end, the Board accepted First Merchants' offer for an all-stock merger.  After further due diligence and negotiation, the merger agreement was executed on October 9, 2018, and the merger was announced on October 10. (*Id.*)  The merger requires the approval of two-thirds of the outstanding shares of MBT common stock.  A shareholder vote is scheduled for February 14, 2019.

MBT filed its Proxy Statement with the SEC on December 21, 2018 and mailed it to shareholders beginning on December 26, 2018.  The Proxy Statement is 73 single-spaced pages, not including annexes.  It provides exhausting detail about the proposed merger and its negotiation, as well as the economic fairness opinion developed by Sandler O'Neill, a well-recognized investment banking firm with particular expertise in financial institution transactions.  (*Id.* at 40-50, B1-B3.)

## ARGUMENT

### A. Legal Standard

"[T]he preliminary injunction is an 'extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited

circumstances which clearly demand it.'"  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)).  The party moving for the injunction has the burden to show that the circumstances clearly demand it.  *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

The court should consider four factors to determine whether to grant a preliminary injunction: (1) the likelihood of success on the merits of the action; (2) the irreparable harm which could result without the requested relief; (3) the possibility of substantial harm to others; and (4) the impact on the public interest. *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985).  Here, all four factors weigh against an injunction.

### B. Plaintiff has no likelihood of success on the merits.

Plaintiff's preliminary injunction motion is based entirely on the allegations of his Complaint.  He has submitted no evidence.  But Plaintiff's Complaint is facially deficient, and accordingly he has no likelihood of success on the merits. Concurrently with this Opposition, Defendants have submitted a Motion to Dismiss.  Defendants incorporate by reference the arguments in its Motion to Dismiss in this Opposition Brief.  A detailed summary of those arguments follows.

As a class action alleging violations of federal securities law, Plaintiff's claims are governed by the Private Securities Litigation Reform Act ("PSLRA").

15 U.S.C. § 78u–4(a)(1).  The PSLRA imposes specific and mandatory pleading requirements.  In particular, where plaintiffs allege that the defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading," plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed."  15 U.S.C. § 78u–4(b)(1).

In addition, the Plaintiff must plead, with particularity, facts giving rise to a "strong inference" that each defendant acted with the required state of mind.  15 U.S.C. § 78u–4(b)(2).  As argued below, the proper state of mind for Section 14(a) claims is scienter, i.e., intent or knowledge of wrongdoing.  But at the very least, Plaintiff must allege facts giving rise that each Defendant acted negligently.  Plaintiff's PI Motion wholly fails to acknowledge these basic requirements of federal securities law claims.

1. *Plaintiff has no likelihood of success on his Section 14(a) claim.*

Plaintiff's Section 14(a)[1] claim fails for three separate reasons. First, Plaintiff has not identified *any* specific statement rendered misleading by the alleged omissions. Second, the alleged omissions were not material. Third, Plaintiff has failed to plead that Defendants acted with the requisite state of mind.

    a. <u>Plaintiff fails to identify *any* specific statement in the Proxy rendered misleading by the alleged omissions</u>.

Under the PSLRA, an "'[o]mission of information from a proxy statement will violate Section 14(a) and Rule 14a–9 **only if either the SEC regulations[2] specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading**.'" *Kugelman v. PVF Capital Corp.*, 972 F. Supp. 2d 993, 997 (N.D. Ohio 2013) (quoting *Local 295/Local 851 v. Fifth Third Bancorp,* 731 F.Supp.2d 689, 716 (S.D.Ohio 2010)) (emphasis added).

Thus, a bare allegation that a proxy statement should have contained *additional* information does not state a claim under Section 14(a). *See Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 WL 5797624, at *4 (N.D. Ind. Oct. 28, 2013) ("Even assuming the information alleged to have been omitted was

---

[1] SEC Rule 14a9, the basis for Plaintiff's claim, prohibits proxy solicitations "containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9(a).

[2] Plaintiff does not allege that any of the omitted information was specifically required by SEC regulations.

indeed material and excluded from the proxy statement, nowhere does plaintiff specify which statements in the proxy statement are made misleading as a result of the missing information.  Rather, the plaintiff relies on various *truthful* statements made in the proxy statement and argues that defendants must tell him more about the subject of those statements."); *see also Louisiana Mun. Police Employees Ret. Sys. v. Cooper Indus. plc*, No. 12 CV 1750, 2012 WL 4958561, at *10 (N.D. Ohio Oct. 16, 2012).

Here, Plaintiff generally alleges that the Proxy Statement omits material information, but Plaintiff fails to identify any specific statement rendered misleading by the omissions.  With respect to the alleged omissions regarding the bidding process (Compl. ¶ 44; PI Motion at 11-13), Plaintiff does not allege that the Proxy Statement's description of the bidding process was inaccurate in any way.  Likewise, with respect to the Proxy's discussion of Sandler O'Neill's financial analyses (Compl. ¶¶ 45-53; PI Motion at 13-18), the Complaint does not identify any statements that are false or misleading.  Rather, Plaintiff simply describes *additional* information he would like to have and then vaguely asserts that the omission of this information renders the Proxy "incomplete and misleading."  (*E.g.*, Complaint ¶ 49.)  But under the PSLRA, Plaintiff must identify "each statement" made misleading by the omission, and the *specific reasons* the statement is misleading.  Thus, he has failed to state a viable Section 14(a) claim.

b.  <u>In any event, the alleged omissions were not material</u>.

The touchstone of a Section 14(a) claim is a showing that the claimed omission is material.  *See Strategic Turnaround Equity Partners, L.P. v. Fife*, No. 10-CV-11305, 2010 WL 2630363, at \*4 (E.D. Mich. June 28, 2010).  "A misrepresentation or an omission is material only if there is a substantial likelihood that a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information made available."  *Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 242 (6th Cir. 2015). Information that would have significantly "altered the total mix" of information available to shareholders is wholly different than information that "would simply be nice to know."  *Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 WL 6791611, at \*6 (E.D. Va. Dec. 2, 2014).  "Proxy statements need not be, and indeed, should not be, an exhaustive catalog of all information that might conceivably be helpful to a shareholder."  *Montanio v. Keurig Green Mountain, Inc.*, 237 F. Supp. 3d 163, 175 (D. Vt.).

i.  The Proxy Statement described the bidding process in detail, and the alleged failure to disclose additional information about alternative bids was not material.

Plaintiff alleges that the Proxy Statement omits material information about the bidding process – and in particular about an alternative bid MBT received. (Complaint ¶ 44; PI Motion at 11-13.)  Specifically, Plaintiff wants to know (a) the

9

"implied value" of an alternative bid received by MBT, as of certain dates; and (b) the reasons for not attempting further negotiations with the alternative bidder or any other previously interested party.  (*Id.*)  These are not material omissions.

The reality is that the Proxy includes a detailed section describing the bidding process that ultimately led to the agreement with First Merchants, and the claimed omissions are not material as a matter of law.  (Ex. A at 35-38.)  "[C]ourts have repeatedly held that companies are not required to disclose details regarding why other prospective buyers declined to make an offer to continue the bidding process."  *Smith v. Robbins & Myers, Inc.*, No. 3:12-CV-281, 2012 WL 5479061, at *3 (S.D. Ohio Oct. 26, 2012).  While it is true that "directors must give stockholders an accurate, full, and fair characterization of the events leading up to a board's decision to recommend a tender offer," a proxy need not provide "a play-by-play description of every consideration or action taken by a Board[.]" *Louisiana Mun. Police Employees Ret. Sys. v. Cooper Indus. plc*, No. 12 CV 1750, 2012 WL 4958561, at *7, n.6 (N.D. Ohio Oct. 16, 2012) (quoting *In re Cogent Inc. Shareholder Litig.*, 7 A.3d 487, 510-11 (Del. Ch. 2010)).

The Proxy provides an extensive description of the many business factors the Board considered in deciding to accept First Merchants' offer.  (Ex. A at 39-40.)  The economic value of First Merchants' offer was merely one in a long list of relevant considerations.  This is, after all, a strategic *merger*, not an auction or cash

10

sale.  In view of the Proxy Statement's comprehensive discussion of the merger background, the Complaint fails to plausibly allege that the missing details were a material omission.[3]

Like the kindergartner asking an infinite chain of "why" questions, a shareholder plaintiff can *always* claim that a proxy fails to provide sufficient explanation for the board's decision.   But "[a]sking 'why' does not state a meritorious disclosure claim."  *In re Sauer-Danfoss Inc. Shareholders Litig.*, 65 A.3d 1116, 1131 (Del. Ch. 2011).  The bottom line is that Plaintiff has failed to state with particularity why the alleged omissions about the bidding process were material, and thus has failed to state a valid Section 14(a) claim.

> ii. The Proxy Statement provided a fair summary of Sandler O'Neill's financial analyses and fairness opinion; the alleged omissions of details of particular inputs is not required.

The same goes for the alleged failure to include details about specific inputs to Sandler O'Neill's financial analysis, including financial projections. (Complaint, ¶ 45-47, 48-50; PI Motion at 13-18.)   "There is no general or

---

[3] The Complaint makes much of the fact that the implied value of First Merchants' stock offer as of December 2018 ($9.86 per MBT share) was *lower* than the initial $13.50 implied value in First Merchants' initial bid, and also lower than the August 23, 2018 alternative bid, which was somewhere between $13.00 and $13.50 in implied value.  This discrepancy is meaningless, however, because "implied value" – which is purely based on a comparison of the companies' stock prices at a moment in time – necessarily varies over time as stock prices rise and fall.  Through the merger, MBT shareholders will become First Merchants shareholders, and the implied value of MBT's stock price at any particular moment is simply not dispositive of the soundness of the transaction.  Moreover, the Proxy Statement itself reveals that the implied value of the August 23 alternative bid (between $13.00 and $13.50) was *lower* than the August 25 bid by First Merchants ($13.59).  Nothing in federal securities law requires MBT to disclose *even more* information about why it accepted First Merchants' obviously superior bid.

independent duty to disclose 'soft information,' information that is uncertain and not objectively verifiable such as 'predictions, matters of opinion, and asset appraisals.'" *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 569–70 (6th Cir. 2004) (quoting *Helwig,* 251 F.3d at 559).

In particular, with respect to fairness opinions provided in connection with proposed transactions, "[c]ourts have dismissed shareholder claims seeking assumptions and components of a financial advisor's cash flow analysis; all that is required in a proxy statement is a fair summary." *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 871–72 (S.D. Ohio 2013); *see also Malon*, 2014 WL 6791611, at *6. ("Courts have consistently held that the duty of disclosure does not extend to the provision of information so extensive and detailed as to permit stockholders to make an independent determination of fair value or recreate the analysis of a financial advisor."); *Assad v. Mines Mgmt., Inc.*, No. 2:16-CV-00256-SMJ, 2016 WL 4611573, at *4 (E.D. Wash. Sept. 2, 2016) (noting "substantial authority" *against* the "proposition that all material considered by a financial advisor in the course of evaluating a proposed transaction is material and must be included in a proxy statement," including "financial projections," which are "inherently subjective").

Here, the Proxy Statement contains 10 single-spaced pages describing the analysis performed by Sandler O'Neill, with numerous tables summarizing Sandler

12

O'Neill's conclusions, as well as the full text of the fairness opinion itself.  (Ex. A at 40-50; Annex B.)   The Proxy Statement also incorporates by reference prior financial information publicly filed by MBT and First Merchants, much of which was referenced in the description of Sandler O'Neill's analysis.

 Plaintiff does not take issue with the methodology or conclusions of Sandler O'Neill's analysis.  He simply demands to see more of the underlying data.  As outlined above, federal courts uniformly reject such demands in the context of Section 14(a) claims.  As a matter of law, such data is not material to a reasonable stockholder; all that is required is a fair summary of the financial advisor's opinion.  The Complaint does not explain why the Proxy's 10-page description of Sandler O'Neill's analysis fails to qualify as a fair summary.   Accordingly, Plaintiff fails to adequately state a claim that the proxy omitted material information relating to Sandler O'Neill's analysis.

   iii.  The Complaint fails to allege any material omissions with respect to Donnelly Penman's work.

The Complaint alleges that "the Proxy fails to disclose any opinion of Donnelly Penman as to the fairness of the merger [or] any financial analyses performed by Donnelly Penman[.]"  (Complaint ¶ 52; PI Motion at 18-20.)  But the Complaint does not allege that Donnelly Penman actually provided any such opinions or analyses, and Plaintiff's PI Motion does not provide any factual basis

for believing that it did do such work.  Thus, Plaintiff has failed to articulate any viable claim for an omission in this regard.

Alternatively, the Complaint alleges that, "to the extent Donnelly Penman did not provide an opinion concerning the fairness of the Merger or perform any financial analyses in consideration thereof, the Proxy fails to disclose its bases for not doing so, and the reasons why the Board engaged Donnelly Penman as a financial advisor in the first place and exactly what it did." (Complaint ¶ 52; PI Motion at 19.)  But the Proxy *does* disclose the reason why MBT engaged Donnelly Penman:  its "prior relationships and national reputations for investment banking services." (Ex. A at 35.)  Donnelly Penman met with the MBT Board and provided it with market information regarding recent mergers in the financial services industry, and also identified potential candidates for a strategic transaction. (*Id.* at 35-36.)  The Proxy also notes that Donnelly Penman may assist in the solicitation of proxies. (*Id.* at 29.)  The Complaint does not allege that Donnelly Penman did anything that was not disclosed.  Thus, the Complaint fails to state a claim for a material omission with respect to Donnelly Penman.

    c.   The Section 14(a) claim should be dismissed for failure to adequately plead that any Defendant acted with scienter (or at least negligently).

Under the PSLRA, the Complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to

14

a strong inference that the defendant acted with the required state of mind."   15 U.S.C. § 78u–4(b)(2).  There is authority in the Sixth Circuit that the required state of mind for 14(a) claims is *scienter*, i.e., that the defendant knew that his or her acts were wrong.  *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 428 (6th Cir.).   The *Adams* decision applied to corporate outsiders involved in proxy solicitations, such as outside accountants.   *Id.*   But the reasoning in *Adams* fully applies to corporate directors as well.  The *Adams* court noted that the target of the statute – the "unscrupulous" corporate officials who conceal and distort facts – supported a requirement to show that the defendant *knew* that his or her acts were wrong.   *Id.* at 428.   The court further noted analyzed the textual similarities between § 14(a) and § 14(e), which requires scienter, and concluded that the similar language supported the finding that § 14(a) also required a showing of scienter.  *Id.* at 430.  Based on this logic, it is proper to require scienter for claims against corporate "insiders."

Here, the Complaint lacks any particular facts to support an inference that any Defendant knew that the Final Proxy wrongfully omitted specific material facts or intended to deceive shareholders.  The Complaint merely alleges that the Individual Defendants "knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading."  (Complaint ¶

60.)  This is insufficient to meet the PSLRA's requirement that the requisite state of mind be pled "with particularity" *for each defendant.  See  Local 295/Local 851 IBT Employer Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 720 (S.D. Ohio 2010) ("group pleading" does not meet the PSLRA's requirement to plead the requisite state of mind for each defendant.)

Even if this Court applies a lesser standard of negligence, *see Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 868 (S.D. Ohio 2013), the Complaint fails, because there are no facts giving rise to a "strong inference" negligence. Again, the only relevant allegation in the Complaint is the naked assertion that the Defendants "knew or should have known" of the alleged material omissions.  This is insufficient as a matter of law, both because there are no particular facts alleged and because it is improper group pleading.  Plaintiff must allege particular facts supporting a strong inference that *each* Defendant acted negligently.  It has failed to do so, and its Section 14(a) claim must be dismissed.

2. *Plaintiff's Section 20(a) claim must also be dismissed, because Plaintiff has failed to adequately allege an underlying securities law violation.*

Because the Section 14(a) claim must be dismissed, Plaintiff's Section 20(a) claim must be dismissed as well.  Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such

16

controlled person is liable . . ..." 15 U.S.C. § 78t(a). "In order to prove a *prima facie* case under section 20(a), a plaintiff must prove a primary violation of federal securities laws and that the targeted defendants ... exercised actual power or control over the primary violator." *In re Keithley Instruments, Inc. Sec. Litig.,* 268 F.Supp.2d 887, 906 (N.D.Ohio 2002). When a Complaint fails to state a cause of action under § 14(a) or any other securities statute or regulation, "there is no primary violation on which a section 20(a) claim can be premised," and the Section 20(a) claim should be dismissed. *Louisiana Mun. Police Employees Ret. Sys. v. Cooper Indus. plc*, No. 12 CV 1750, 2012 WL 4958561, at *10 (N.D. Ohio Oct. 16, 2012). Because Plaintiff's Section 14(a) claim fails, the Section 20(a) claim also fails.

### C. Plaintiff has not shown irreparable harm.

Plaintiff will not suffer irreparable because any legitimate claim for securities law violations can be remedied with money damages. *See Basicomputer Corp. v.* Scott, 973 F.2d 507, 511 ("[A] plaintiff's harm is not irreparable if it is fully compensable by money damages.") Federal courts routinely deny requests for disclosure-related injunctions due to the availability of money damages on federal securities claims. *See, e.g.*, *Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1174 (D. Minn. 2012) (finding no irreparable harm in part because "monetary damages are regularly used to satisfy claims alleging violations of the

securities laws") (internal quote omitted); *Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 WL 5797624, at *5 (N.D. Ind. Oct. 28, 2013) ("[B]ecause the court could later undo the damage caused by any alleged (but not adequately specified) illegal proxy statement by providing monetary damages—which typically constitutes an adequate remedy at law-an adequate alternative exists."); *Herring v. Rite Aid Corp.*, No. 1:15-cv-2440, 2016 WL 401026, at *4 (M.D. Pa. Jan. 28, 2016) (finding no irreparable harm because "there would still be a claim for money damages to pursue"); *Iavarone v. Raymond Keyes Assocs., Inc.*, 733 F. Supp. 727, 732 (S.D.N.Y. 1990) (finding "equitable relief is not appropriate, as money damages will fully compensate plaintiff" for his allegations that the defendants violated the Exchange Act "by making false statements of material facts and omitting to state material facts"); *Parshall v. HCSB Fin. Corp.*, No. 4:17-CV-01589-RBH, 2017 WL 3130479, at *7 (D.S.C. July 24, 2017) ("[Plaintiff] appears to have an adequate remedy at law because he could be compensated with money damages for his current $14 holding, and therefore extraordinary injunctive relief is not appropriate."); *Ryan v. VHA Enterprises, Inc.*, No. 90 CIV. 2656 (PKL), 1990 WL 58969, at *3 (S.D.N.Y. May 1, 1990) (denying injunctive relief because "damages can provide sufficient and appropriate relief to plaintiff should he be ultimately successful in this action").

Here, Plaintiff is free to seek damages for his claims, and indeed his Complaint requests damages.  Also, if Plaintiff is unconvinced about the wisdom of the proposed transaction, nothing prevents him from "voting against the merger, encouraging others to do the same, or selling his stock." *Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 WL 5797624, at *5 (N.D. Ind. Oct. 28, 2013). Given these alternative remedies, Plaintiff will not suffer irreparable harm absent an injunction.

Moreover, Plaintiff has offered no evidence whatsoever substantiating his allegation of irreparable harm.  Courts have held that that this lack of evidence severely undercuts any claim of irreparable harm and weighs against issuing an injunction.  *See, e.g.*, *Carlson v. Triangle Capital Corp.*, No. 5:18-CV-332-FL, 2018 WL 3546232, at *9 (E.D.N.C. July 23, 2018) ("[C]onspicuously absent from the record is an affidavit by Plaintiff explaining how the alleged omitted disclosures would inform <u>his</u> vote, that he has personally read the Proxy, and that he has a fundamental understanding of the technical concepts about which he seeks further information.") (internal quote omitted); *Parshall v. HCSB Fin. Corp.*, No. 4:17-CV-01589-RBH, 2017 WL 3130479, at *7 (D.S.C. July 24, 2017) ("The Court finds Plaintiff has not made a clear showing of irreparable harm for multiple reasons.  First, Plaintiff has not submitted an affidavit or declaration from himself (or an expert) detailing how the omitted disclosures would inform his vote.").

Plaintiff's claim of irreparable harm is based purely on the rhetoric of counsel, which is insufficient to meet his heavy burden to obtain an injunction.

Finally, Plaintiff's considerable delay in bringing this preliminary injunction motion weighs against a finding of irreparable harm.   MBT filed its Proxy Statement with the SEC on December 21, 2018 (at which point it was publicly available) and began mailing the Proxy Statement to shareholders on December 26, 2018.   Plaintiff did not file his preliminary injunction motion until January 23, 2019, over a month after the Proxy Statement became publicly available.   This delay weighs against his claim of irreparable harm.   *See Herring v. Rite Aid Corp.*, No. 1:15-cv-2440, 2016 WL 401026, at *4 (M.D. Pa. Jan. 28, 2016) (noting that, on a motion to enjoin a shareholder vote for claimed disclosure violations, "Plaintiffs' claim of irreparable harm is belied by the late filing of the instant Motion"); *Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 WL 6791611, at *3 (E.D. Va. Dec. 2, 2014) (noting that tardiness in filing a preliminary injunction motion weighs against granting an injunction, in view of the rapidly approaching shareholder vote).

In sum, Plaintiff has failed to make a showing of irreparable harm, and thus he is not entitled to the extraordinary relief of a preliminary injunction.

### D. The requested injunction would inflict serious harm on others, including MBT and its shareholders.

Plaintiff has taken it upon himself to enjoin a shareholder vote on a $290 million transaction affecting every shareholder of MBT and every shareholder of First Merchants.  Plaintiff owns 854 out of the 23,025,525 outstanding shares of MBT common stock, or 0.037%.  This fact alone undercuts his claim for relief.  In rejecting a request for a disclosure-related injunction, one federal court noted:

> Finally, and perhaps most obviously, Plaintiff owns a minuscule share of [the company's] stock and is the only stockholder claiming irreparable injury.  This case has not been certified as a class action; Plaintiff has not moved for class certification; and Plaintiff has not identified any other stockholders claiming they need the same disclosures he seeks.

*Parshall v. HCSB Fin. Corp.*, No. 4:17-CV-01589-RBH, 2017 WL 3130479, at *7 (D.S.C. July 24, 2017); *see also Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 WL 6791611, at *3 (E.D. Va. Dec. 2, 2014) ("[T]he Court is not confronted with a group of stockholders—only a single disgruntled stockholder with a *de minimis* ownership interest.  Plaintiff has no warrant to cast his claim as one on behalf of all the stockholders; therefore, the Court is not persuaded that the balance of hardship tips clearly in Plaintiff's favor."); *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 401-02 (S.D.N.Y. 2011) (noting that the plaintiff owned only $75 worth of shares but that her motion, if granted, "would delay and quite

possibly imperil a $239 million transaction which was negotiated over a period of months…").[4]

Moreover, numerous federal courts have recognized that delaying a shareholder vote can have significant harm on the merging companies and their shareholders. *Parshall*, No. 4:17-CV-01589-RBH, 2017 WL 3130479, at *7 (noting "harm that defendants will likely suffer when a single shareholder plaintiff seeks to enjoin a shareholder vote at the eleventh hour"); *Orlando*, 2013 WL 5797624, at *6 (noting that "enjoining a complex and time sensitive transaction such as this will at a minimum create uncertainty and delay" that "could jeopardize the transaction itself"); *Gottlieb v. Willis*, No. 12-CV-2637 PJS/JSM, 2012 WL 5439274, at *7 (D. Minn. Nov. 7, 2012) (same).

Those risks are present here. Delaying the shareholder vote, and potentially the closing of the merger, would create numerous major problems for MBT, its employees, its customers, and its shareholders. Among these are:

- MBT's employees would face increased uncertainty as to the nature and timing of their future roles. MBT depends on a stable workforce, and delay puts MBT at increased risk of disruption in the workforce.

---

[4] Five other plaintiff's firms have filed putative class actions based on alleged disclosure violations (one other in federal court and four in state court in Monroe County). The plaintiffs in those cases are similarly small-scale shareholders. None has moved for a preliminary injunction. One state court plaintiff (*Viky v. Miller et al.*, Monroe County Case No. 18-141600) requested expedited discovery in service of an anticipated preliminary injunction motion. That motion was heard by Judge Daniel S. White on January 25, 2018. Judge White denied the motion in an oral ruling from the bench.

- Any merger of this size and complexity involves extensive and costly transition planning. MBT has planned significant transition events for early March, following the anticipated March 1 closing, including changes in information technology; transition of employees; and transition of customers. Delay will jeopardize the effectiveness of these transitions and increase their cost.

- Delay will necessitate additional communication with shareholders and with state and federal regulatory agencies. These communications involve costly professional services as well as significant hard out of pocket costs.

- MBT shareholders will be deprived of their access to the merger consideration during the delay.

- Ultimately, any increased costs associated with delay would be borne by MBT's shareholders.

- Delay may cause the markets to question when or whether the transaction will ultimately be closed, increasing the volatility of MBT's stock and increasing risk for shareholders.

- MBT's customers expect and deserve certainty in the delivery of products and services. Reliable financial services are vital to the financial health of MBT's personal and business enterprise. While MBT and First Merchants are committed to providing a smooth transition for all customers, a delay could significantly complicate the companies' transition efforts and increase a risk of disruption to

customers.  Also, any concern on the part of customers that the transition will not go as planned could irreparably harm the value of the merger.  (Chaffin Decl., Ex. B.)

### E. The public interest weighs against an injunction.

Both MBT and First Merchants are publicly traded companies.  Enjoining the shareholder vote "has the potential to be enormously disruptive and create public uncertainty regarding the entities involved."  *Parshall v. HCSB Fin. Corp.*, No. 4:17-CV-01589-RBH, 2017 WL 3130479, at *8 (D.S.C. July 24, 2017).  In addition, both companies have a wide customer base, and any uncertainty or delay regarding the transition could increase the risk of disruption to customers.  (*See* Ex. B.)  Accordingly, the public interest weighs against an injunction.

### F. Bond

Fed. R. Civ. P. 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Here, a delay in the shareholder vote runs the risk of delaying or imperiling a $290 million merger.  In the event the court considers issuing an injunction, Plaintiff must post a substantial bond sufficient to protect MBT and its shareholders against the costs associated with the delay.

## CONCLUSION

All of the preliminary injunction factors weigh heavily against issuance of an injunction.  For these reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

s/ Matthew T. Kemp
Matthew T. Kemp (P79441)
Thomas P. Dillon (P55191)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Email:        mkemp@slk-law.com
tdillon@slk-law.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on February 1, 2019, a copy of this **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** was filed and served through the Court's ECF system.  All parties may access a copy of this document through the Court's system.

s/ Matthew T. Kemp
Matthew T. Kemp (P79441)
SHUMAKER, LOOP & KENDRICK, LLP
Attorneys for Defendants